IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

MARCUS FOREMAN,
*Plaintiff*,

v.                                          Civil Action No. ELH-17-26

WEXFORD HEALTH SOURCES, INC., et al.
*Defendants*.

## MEMORANDUM OPINION

Marcus Foreman, a Maryland prisoner incarcerated at the Eastern Correctional Institute ("ECI"), filed suit under 42 U.S.C. § 1983 against Wexford Health Sources, Inc. ("Wexford"); Bruce Ford, P.A.; ECI; and "Nurse Georgia." ECF 1.[1] Plaintiff alleges, *inter alia*, that he received inadequate medical care, in violation of the Eighth Amendment, after he fell onto a concrete floor from a top bunk and injured his head, wrist, and back. *Id.* at 2-5.[2] He also asserts medical malpractice. *Id.* at 5.

Among other things, plaintiff complains that Wexford failed to timely provide a magnetic resonance imaging ("MRI") test; x-rays; and a concussion test after the fall. *Id.* at 2-5. He also claims that he merely received sterile-strips and band-aids to treat a three-inch laceration that he sustained due to the fall, but he should have received stitches and gauze. *Id.* at 1-2.

---

[1] At the time Foreman filed suit, he was self-represented. He wrote Case Number "ELH-16-1809" on his Complaint. ECF 1. That Case Number pertains to a suit filed by Forman on June 2, 2016, which was dismissed for failure to name a proper defendant and failure to state a claim. *See* ELH-16-1809, ECF 5; *id.*, ECF 12. Therefore, Foreman's Complaint was docketed on January 4, 2017, as a new lawsuit. Foreman subsequently obtained counsel.

"Nurse Georgia" is unidentified and has not been served. *See* Docket. Additionally, ECI was not served. *See* ECF 7; ECF 9. Indeed, no attorney has entered an appearance for ECI or the State of Maryland. Because ECI and "Nurse Georgia" were not served, I shall not consider plaintiff's claims against them.

[2] The citations refer to the Court's electronic pagination system.

Additionally, plaintiff asserts that he has suffered lost wages due to an inability to work at the prison. Further, he maintains that he continues to suffer "shocking back pain," headaches, and other medical issues. *Id.* at 5. Plaintiff seeks $600,000 in compensatory damages. *Id.*[3]

Wexford and Ford moved to dismiss the suit or, in the alternative, for summary judgment. ECF 17. Defendants' motion is supported by a memorandum of law (ECF 17-3) (collectively, the "Motion") and multiple exhibits (*see* ECF 17-4 at 1-120; ECF 17-5), including over 100 pages of plaintiff's prison medical records. ECF 17-4 (medical records). Through counsel,[4] Foreman filed an opposition to the Motion (ECF 23), with a supporting memorandum of law (ECF 23-1) (collectively, the "Opposition") and multiple exhibits. *See* ECF 23-2 at 1-29. Defendants have replied. ECF 24 ("Reply").

The Motion is fully briefed, and no hearing is necessary to resolve it. *See* Local Rule 105.6. For the reasons that follow, as to Wexford I shall construe the Motion as a motion to dismiss and I shall grant the Motion. As to Ford, and as to Wexford in the alternative, I shall construe the Motion as one for summary judgment, and I shall grant the Motion.

## I. Factual Summary

Wexford is the contractual provider of medical services to inmates of the Maryland Department of Public Safety and Correctional Services ("DPSCS"). ECF 17-5, ¶ 1; *see also* ECF 23-2 (same). Bruce Ford is a Physician's Assistant employed by Wexford. ECF 17-3 at 3.

---

[3] In his Complaint, Foreman also claims that ECI violated the Fourth Amendment to the Constitution and Article 24 of the Maryland Declaration of Rights ("Article 24"). ECF 1 at 5. Article 24 is Maryland's counterpart to the Fourteenth Amendment, and is ordinarily interpreted *in pari materia* with its federal analog. *See, e.g., Littleton v. Swonger*, 502 F. App'x 271, 274 (4th Cir. 2012); *see also Meyers v. Balt. Cty.*, 981 F. Supp. 2d 422, 430 (D. Md. 2013).

[4] As noted, Foreman was not represented by counsel when he filed suit. But, he subsequently obtained an attorney. ECF 19. His lawyer did not seek to file an amended complaint. *See* Docket.

Plaintiff is in his late thirties.  According to Jason Clem, M.D., a licensed physician employed by Wexford to provide medical services to prison inmates, plaintiff has a medical history of hypertension and chronic pain.  ECF 17-5 (Affidavit of Jason Clem, M.D.), ¶ 4.

In his suit, Foreman alleges that, on or about March 26, 2016, he was assigned to a top bunk at ECI.  ECF 1 at 2.  According to Foreman, ECI provides prisoners with plastic chairs, rather than ladders, to access the top bunks.  *Id.*  Because the plastic chair was unstable, it slipped from under plaintiff's feet while he was descending the top bunk.  *Id.*  As a result, he fell onto "solid concrete and the corner of the metal bunk," where he struck his back and head.  *Id.* Plaintiff avers that he sustained a "3 inch laceration, a swollen wrist and a serious back injury." *Id.*

Foreman claims that he waited more than fifteen minutes until "Nurse Georgia" was able to see him.  *Id.*  Plaintiff recounts that he went "down to Medical," where "Nurse Georgia" gave him "sterile strips (instead of stitches), band-aids (instead of a gauze pad) and sent [him] back to the unit . . . (instead of the Infirmary)," without assessing him for a concussion.  *Id.*  Foreman asserts that he asked "Nurse Georgia" for an MRI, but that his request was denied because x-rays were only available on Tuesdays, Wednesdays, and Thursdays.  *Id.* at 3.[5]  Foreman states that "officers & inmates both tried to keep [him] awake" the night of the incident because of concern that plaintiff may have sustained a concussion.  *Id*. at 2.

Additionally, plaintiff asserts that an unidentified Wexford employee denied plaintiff's request for a note excusing him from work responsibilities in the prison kitchen "for at least a day or two."  *Id.* at 3.  As a result, plaintiff was "forced to work with . . . a massive headache." *Id.*  Foreman also asserts that Ford denied plaintiff's request for "bottom bunk status" after the

---

[5] The Court notes that March 26, 2016, fell on a Saturday.

fall, claiming plaintiff's medical conditions did not require it. ECF 1 at 3.

According to Forman, during his medical visit with "Nurse Georgia on March 26, 2016," he was "promised" that he would be "called back" to the Medical ward in approximately three days for x-rays of his head, back, and wrist. ECF 1 at 1, 3. Plaintiff saw "Nurse Georgia" on March 27, 2016, to obtain a gauze pad to cover his stitches, in lieu of band aids. *Id.* at 4.[6] On March 30, 2016, plaintiff was "called up to Medical" for a blood pressure check, but he was not examined for his injuries. *Id.* Plaintiff contends that, after approximately five weeks without receiving the "promised" care, he took the advice of an unidentified nurse "to put in a sick call and force [Wexford] to do [its] job." *Id.* at 3.

Foreman met with Ford on April 27, 2016. *Id.* No x-rays were conducted at that appointment, but a date for x-rays was scheduled. *Id.* Plaintiff states that he did not receive an x-ray of his skull until June 16, 2016. *Id.* at 5.

Defendants submitted Foreman's medical records. ECF 17-4 at 1-120. The medical records reflect that Forman was examined by Wexford medical staff on more than thirty occasions between the time he fell from his bunk on March 26, 2016, and the time he filed this lawsuit on January 4, 2017. *See id.*

Plaintiff was seen by Sarah Jenkins, R.N., on March 26, 2016, because of the fall form his bunk. ECF 17-4 at 1. According to Nurse Jenkins's notes from that appointment, plaintiff denied "LOC," *i.e.*, loss of consciousness. *Id.* The examination revealed "active bleeding" from a wound that was 4 centimeters long, 1/3 centimeter wide, and 1/10 centimeter deep. ECF 17-4 at 1; ECF 17-5, ¶ 5. Further, plaintiff had "slight swelling of [his] left lateral hand", but no

---

[6] Plaintiff previously asserted that he did not receive stitches. ECF 1 at 2. Based on a review of plaintiff's medical records, it does not appear that he received stitches on March 26, 2016. *See* ECF 17-4 at 1-2. Nor did Wexford submit a medical record dated March 27, 2016.

numbness or tingling.  ECF 17-4 at 1.  The bleeding was stopped with pressure, and the wound was cleansed and dressed.  *Id.* at 2; *see also* ECF 17-5, ¶ 5.  No other injuries were observed.  *Id.* At the direction of Dr. Clem, plaintiff was given a tetanus shot.  ECF 17-4 at 2; ECF 17-5, ¶¶ 1, 5.

On April 19, 2016, plaintiff told Nichole Frey, R.N., that he was experiencing "double and blurred vision after getting up from lying position."  ECF 17-4 at 3; *see* ECF 17-2, ¶ 6.  He complained of headaches and dizziness.  Plaintiff's "BP" was elevated.  ECF 17-4 at 3.  A "Neuro check" was completed and plaintiff was found to be within normal limits.  *Id.*; ECF 17-5, ¶ 6.  He was instructed to change positions slowly.  However, he was described as "difficult to communicate with" and "very argumentative . . . ."  ECF 17-4 at 3.

P.A. Ford saw plaintiff on April 27, 2016.  *Id.* at 5-7.  Plaintiff recounted his fall from his bunk, but Ford noted no loss of consciousness or blurred vision.  *Id.* at 5.  In Ford's view, plaintiff's condition did not warrant reassignment to a bottom bunk.  *Id.*  Ford prescribed Excedrin for pain (*id.*), and he ordered x-rays of plaintiff's wrist and back.  *Id.* at 7; ECF 17-5, ¶ 7.

The results of the wrist and back x-rays were not available on May 23, 2016, when plaintiff was next seen by Ford.  ECF 17-4 at 8; ECF 17-5, ¶ 8.  Plaintiff continued to complain of back pain, although his gait was normal and there was no indication of "acute distress."  ECF 17-4 at 8.  Excedrin was discontinued and Naprosyn was ordered.  *Id.* at 8-9; ECF 17-5, ¶ 8.

Plaintiff was seen on May 27, 2016, by Melinda Tieskotter, R.N., complaining of dizziness and headaches from his fall.  ECF 17-4 at 10-11.  In her notes from that appointment, Tieskotter stated that plaintiff said he wanted an MRI.  *Id.*  However, Tieskotter noted that there were no obvious signs of any distress.  *Id.* at 10.  He was again seen by Nurse Tieskotter on June

1, 2016. ECF 17-4 at 12-13. Plaintiff described the pain in his back as if he had been "'shot.'" *Id.* at 12. However, Tieskotter noted that there were "no obvious signs of distress," plaintiff ambulated with a normal gait, and had no loss of bodily functions. *Id.* ECF 17-4 at 12.

On June 14, 2016, plaintiff was seen by Margaret Vickers, R.N. ECF 17-4 at 14. Vickers's notes from that appointment recount that plaintiff complained of a painful wrist and constant headaches, but no longer wanted a bottom bunk. *Id.*

Also on June 14, 2016, plaintiff was seen by Ben Oteyza, M.D., for hypertension and ongoing complaints related to the fall from his bunk. *Id.* at 15-17. Dr. Oteyza's notes from that appointment state that no fractures were found in the x-rays of plaintiff's back and wrist. *Id.* at 15. However, Dr. Oteyza's notes indicate that plaintiff complained of frequent headaches. *Id.* at 15. The examination reflected no other medical concerns. ECF 17-4 at 15-16.

Dr. Oteyza ordered an x-ray of plaintiff's skull on June 14, 2016. *Id.* at 16. Based on plaintiff's medical records, it appears that the x-ray was performed on the same date. *Id.* at 17. According to Dr. Clem, the x-ray results of the skull showed no "abnormalities." ECF 17-5, ¶ 10. Results of the skull x-ray appear in plaintiff's medical records in the notes of Deborah Tabulov, N.P, who wrote: "XRays ordered. Neg skull and LSS films." ECF 17-4 at 36.

On July 1, July 6, July 17, August 2, and August 9, 2016, plaintiff was seen by multiple nurses for complaints of headache, dizziness, and back pain. *Id.* at 18-28. Plaintiff complained that his prescription of Naprosyn was ineffective. *See, e.g.*, *id.* at 18-20, 23. However, two nurses recorded notes stating that plaintiff did not display symptoms of pain. *See id.* at 23, 27.

Plaintiff was again seen by Ford on August 12, 2016, complaining of lower back pain and headaches. *Id.* at 30-31. According to Ford's notes from that appointment, plaintiff exhibited no acute distress. *Id.* at 30. Ford prescribed a trial course of Neurontin (Gabapentin), and a follow-

up appointment for plaintiff with Wexford's chronic care department. *Id.*; *see also* ECF 17-5, ¶ 12.

On August 26, 2016, plaintiff was seen by Sarah Johnson, R.N. He complained that the Neurontin was ineffective for his pain. ECF 17-4 at 32-33. The dosage was increased. *Id.*

Foreman was seen by Nurse Tabulov in chronic care on August 29, 2016. *Id.* at 34-38. At that appointment, plaintiff complained of migraines and lower back pain. *Id.* at 35. Plaintiff rated his pain as ranging between 5 through 9 on a scale of 1 through 10 (with 10 as the most severe). *Id.* Additionally, plaintiff stated that his Neurontin medication was helping but that he believed the dosage needed to be adjusted. *Id.*

According to Tablov's notes, plaintiff had experienced "eye floaters", cervical spine and lumber spine muscle spasms, and a mild reduction in range of motion for flexion and extension of the lumbar spine. *Id.* at 36-37. Tabulov's notes also reflect that plaintiff was diagnosed with postconcussion syndrome. *Id.* at 34, 38. Plaintiff was prescribed extra strength Tylenol and his dosage for Neurontin was increased. *Id.* at 38. Additionally, Baclofen was prescribed for paraspinal muscle spasms in plaintiff's neck and lower back. ECF 17-5, ¶ 12.

On September 16, September 23, September 27, and October 8, 2016, plaintiff was seen by multiple nurses for complaints of migraines and back pain. ECF 17-4 at 39-48. Plaintiff was prescribed Tramadol for pain. *Id.* at 43; ECF 17-5, ¶ 13.

Ford again saw Foreman on October 18, 2016. ECF 17-4 at 50-51. Ford's notes reflect that plaintiff asked to be seen by Paul Matera, M.D, and for an evaluation at an outside hospital. *Id.* at 50. Ford explained to plaintiff that Wexford needed to evaluate how plaintiff's symptoms responded to the latest treatment plan. *Id.*

On November 2, 2016, plaintiff was seen by Dr. Matera. *Id.* at 52-56. According to Dr.

Matera's notes from that appointment, plaintiff complained of non-radiating lower back pain with intermittent exacerbations in the level of pain he experienced. ECF 17-4 at 53. Additionally, plaintiff complained of experiencing intermittent headaches since his fall. *Id.* at 53. According to Matera's notes, Matera offered plaintiff the bottom bunk but plaintiff declined, stating he had "no problem getting up on top bunk . . . ." *Id.* Plaintiff was positive for moderate and aching lumbosacral pain, with no radiation, improved by Ultram. *Id.* at 53-54. Moreover, the notes reflect plaintiff's "status is improving." *Id.* at 54. Plaintiff's left wrist pain was described as "trace" in severity and resolved. *Id.* Lumbar mobility was noted as decreased with normal flexion, extension, and rotation. *Id.* at 55. No cervical or thoracic spine tenderness was noted. Plaintiff's dosage of Tramadol was increased. *Id.*

On November 15, 2016, plaintiff was seen by Nurse Tabulov. *Id.* at 57-61. Tabulov noted that plaintiff had been tentatively accepted in a drug treatment program. *Id.* at 57. A neurology consult was requested. *Id.* at 61, 62.

Dr. Clem saw plaintiff on November 25, 2016, for a physical assessment. *Id.* at 63-64. No signs or symptoms of injury to chest, back, or legs were noted. *Id.* at 63. On December 6, 2016, plaintiff was seen by Tajuana Ruiz, R.N., with a primary complaint of back pain. *Id.* at 65. He also complained that his prescriptions "'should have never run out[.]'" *Id.*

Dr. Matera again saw plaintiff on December 8, 2016, for follow up and pain management. *Id.* at 68. Nurse Frey and P.A. Ford saw Foreman on December 13, 2016, for a provider visit, and Foreman complained of back pain. *Id.* at 69-73. It was noted that plaintiff "[s]its and stands without difficulty." *Id.* at 69. Moreover, plaintiff's gait was described as "brisk." *Id.* at 72. Nevertheless, the Neurontin dosage was increased to 400 mg. *Id.* at 71.

On December 18, December 27, and December 30, 2016, as well as on January 5,

January 9, and January 30, 2017, plaintiff was seen by several nurses for migraines and back pain. ECF 17-4 at 74-83. Although plaintiff was told that his symptoms and medication requests would be addressed at an upcoming chronic care visit, plaintiff stated that he would continue to submit sick call requests. *Id.* at 79-80.

On February 8, 2017, plaintiff was seen by Becky Harley, R.N. and Nurse Tabulov for a chronic care visit. *Id.* at 84-90, 100-101. Plaintiff complained of daily headaches, dizziness, and neck and back pain. *Id.* at 86-88. He also complained of episodes of sudden onset lower back pain, throbbing and radiating to the thoracic spine and back of his left thigh. *Id.* at 88. Further, he complained that his pain kept him from working. *Id.* Plaintiff was referred to physical therapy. *Id.* at 90.

Dr. Clem approved plaintiff's physical therapy on February 22, 2017. *Id.* at 91. Plaintiff was evaluated for physical therapy on February 24, 2017. *Id.* at 92. He received physical therapy on February 28, March 7, March 21, March 24, March 31, and April 7, 2017. *Id.* at 93-99. According to notes taken by Craig Joachimowski, P.T., on April 7, 2017, plaintiff reported that his pain level was somewhat improved. *Id.* at 99.

Plaintiff was seen by Nurse Johnson on March 19, 2017. *Id.* at 103-04. According to Johnson's notes, plaintiff complained of head and facial pain that plaintiff believed was related to a "dental issue." *Id.* at 103.

On April 7, 2017, Foreman's prescriptions for both Tramadol and Neurontin were renewed, according to a chart update report written by Nurse Tabulov. *Id.* at 106. On April 14 and April 25, 2017, plaintiff was seen by several nurses for complaints of anxiety, back pain and migraines. *Id.* at 107-112. Plaintiff also requested physical therapy. *Id.* at 107. On April 25, 2017, Tabulov saw plaintiff for complaints of pain management and hypertension. *Id.* at 114.

On April 28, 2017, Dr. Clem approved plaintiff's Neurontin and Tramadol prescriptions. ECF 17-4 at 113.

Plaintiff was seen by nurses on July 7 and July 14, 2017, complaining of dizziness. *Id.* at 117-18. His gate "appeared steady." *Id.* at 118. Plaintiff claimed he "needs an MRI to determine cause of symptoms." *Id.*

According to Dr. Clem, plaintiff "continues to be regularly seen by providers at chronic care, and at all times has access to medical providers through the sick call process." ECF 17-5, ¶ 21. Clem opines, "to a reasonable degree of medical probability," that plaintiff "was appropriately evaluated and treated for the fall he suffered and plaintiff was also appropriately treated for his chronic pain condition." *Id.*

Additional facts are included in the Discussion.

## II.     Standard of Review

### A.  Motion to Dismiss

As noted, defendants have moved to dismiss plaintiff's Complaint. ECF 17; ECF 17-3. The purpose of a motion to dismiss, pursuant to Rule 12(b)(6), is to test the sufficiency of a complaint. *See In re Birmingham*, 846 F.3d 88, 92 (4th Cir. 2017); *Goines v. Valley Cmty. Servs. Bd.*, 822 F.3d 159, 165-66 (4th Cir. 2016); *McBurney v. Cuccinelli*, 616 F.3d 393, 408 (4th Cir. 2010), *aff'd sub nom. McBurney v. Young*, 569 U.S. 221 (2013); *Edwards v. City of Goldsboro*, 178 F.3d 231, 243 (4th Cir. 1999). A Rule 12(b)(6) motion constitutes an assertion by a defendant that, even if the facts alleged by a plaintiff are true, the complaint fails as a matter of law "to state a claim upon which relief can be granted."

Whether a complaint states a claim for relief is assessed by reference to the pleading requirements of Fed. R. Civ. P. 8(a)(2). It provides that a complaint must contain a "short and

plain statement of the claim showing that the pleader is entitled to relief." The purpose of the rule is to ensure that defendants are provided with "fair notice" of the claim(s) made against them and the "grounds" for entitlement to relief. *Bell Atl., Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

To survive a motion under Rule 12(b)(6), a complaint must contain facts sufficient to "state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570; *see Ashcroft v. Iqbal*, 556 U.S. 662, 684 (2009) ("Our decision in *Twombly* expounded the pleading standard for 'all civil actions' . . . .") (citation omitted); *see also Willner v. Dimon*, 849 F.3d 93, 112 (4th Cir. 2017). But, a plaintiff need not include "detailed factual allegations" in order to satisfy Rule 8(a)(2). *Twombly*, 550 U.S. at 555. Moreover, federal pleading rules "do not countenance dismissal of a complaint for imperfect statement of the legal theory supporting the claim asserted." *Johnson v. City of Shelby*, ___ U.S. ___, 135 S. Ct. 346, 346 (2014) (per curiam).

"When determining whether a complaint fails to comply with Rule 8(a), 'courts have looked to various factors, including the length and complexity of the complaint, *whether the complaint was clear enough to enable the defendant to know how to defend himself*, and whether the plaintiff was represented by counsel.'" *Rush v. Am. Home Mortg.*, *Inc.*, WMN-07-854, 2009 WL 4728971, at *4 (D. Md. Dec. 3, 2009) (emphasis added) (internal citations omitted) (quoting *North Carolina v. McGuirt*, 114 F. App'x 555, 558 (4th Cir. 2004) (per curiam)). A court may properly dismiss a complaint under Rule 12(b)(6) for failure to comport with Rule 8(a) if the complaint "does not permit the defendants to figure out what legally sufficient claim the plaintiffs are making and against whom they are making it." *McGuirt*, 114 F. App'x at 559.

Thus, a complaint requires more than bald accusations or mere speculation. *Twombly*, 550 U.S. at 555; *see Painter's Mill Grille, LLC v. Brown*, 716 F.3d 342, 350 (4th Cir. 2013). If a

complaint provides no more than "labels and conclusions" or "a formulaic recitation of the elements of a cause of action," it is insufficient. *Twombly*, 550 U.S. at 555. Rather, to satisfy the minimal requirements of Rule 8(a)(2), the complaint must set forth "enough factual matter (taken as true) to suggest" a cognizable cause of action, "even if . . . [the] actual proof of those facts is improbable and . . . recovery is very remote and unlikely." *Twombly*, 550 U.S. at 556 (internal quotations omitted).

In reviewing a Rule 12(b)(6) motion, a court "'must accept as true all of the factual allegations contained in the complaint'" and must "'draw all reasonable inferences [from those facts] in favor of the plaintiff.'" *E.I. du Pont de Nemours & Co.*, 637 F.3d 435, 440 (4th Cir. 2012) (citations omitted); *see Semenova v. Md. Transit Admin.*, 845 F.3d 564, 567 (4th Cir. 2017); *Houck v. Substitute Tr. Servs., Inc.*, 791 F.3d 473, 484 (4th Cir. 2015); *Kendall v. Balcerzak*, 650 F.3d 515, 522 (4th Cir. 2011), *cert. denied*, 565 U.S. 943 (2011). But, a court is not required to accept legal conclusions drawn from the facts. *See Papasan v. Allain*, 478 U.S. 265, 286 (1986). "A court decides whether [the pleading] standard is met by separating the legal conclusions from the factual allegations, assuming the truth of only the factual allegations, and then determining whether those allegations allow the court to reasonably infer" that plaintiff is entitled to the legal remedy sought. *A Society Without a Name v. Virginia*, 655 F.3d 342, 346 (4th. Cir. 2011), *cert. denied*, 566 U.S. 937 (2012).

In general, courts do not "resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses" through a Rule 12(b)(6) motion. *Edwards*, 178 F.3d at 243. But, "in the relatively rare circumstances where facts sufficient to rule on an affirmative defense are alleged in the complaint, the defense may be reached by a motion to dismiss filed under Rule 12(b)(6)." *Goodman v. Praxair, Inc.*, 494 F.3d 458, 464 (4th Cir. 2007) (en banc); *accord*

*Pressley v. Tupperware Long Term Disability Plan*, 533 F.3d 334, 336 (4th Cir. 2009); *see also Meridian Investments, Inc. v. Fed. Home Loan Mortg. Corp.*, 855 F.3d 573, 577 (4th Cir. 2017) (quoting *Leichling v. Honeywell Int'l, Inc.*, 842 F.3d 848, 850-51 (4th Cir. 2016)) ("A defendant's claim that an action is time-barred is an affirmative defense that it can raise in a motion to dismiss when the 'face of the complaint includes all necessary facts for the defense to prevail.'").  However, because Rule 12(b)(6) "is intended [only] to test the legal adequacy of the complaint," *Richmond, Fredericksburg & Potomac R.R. Co. v. Forst*, 4 F.3d 244, 250 (4th Cir. 1993), "[t]his principle only applies . . . if all facts necessary to the affirmative defense 'clearly appear[ ] on the face of the complaint.'"  *Goodman*, 494 F.3d at 464 (quoting *Forst*, 4 F.3d at 250) (emphasis added in *Goodman*).

Under limited exceptions, a court may consider documents beyond the complaint without converting a motion to dismiss to one for summary judgment.  *Goldfarb v. Mayor & City Council of Balt.*, 791 F.3d 500, 508 (4th Cir. 2015).  A court may properly consider documents that are "explicitly incorporated into the complaint by reference and those attached to the complaint as exhibits . . . ."  *Goines*, 822 F.3d at 166 (citations omitted); *see U.S. ex rel. Oberg*, 745 F.3d at 136 (quoting *Philips v. Pitt Cty. Mem'l Hosp.*, 572 F.3d 176, 180 (4th Cir. 2009)); *Anand v. Ocwen Loan Servicing, LLC*, 754 F.3d 195, 198 (4th Cir. 2014); *Am. Chiropractic Ass'n v. Trigon Healthcare, Inc.*, 367 F.3d 212, 234 (4th Cir. 2004), *cert. denied*, 543 U.S. 979 (2004); *Phillips v. LCI Int'l Inc.*, 190 F.3d 609, 618 (4th Cir. 1999).

A court may also "consider a document submitted by the movant that was not attached to or expressly incorporated in a complaint, so long as the document was integral to the complaint and there is no dispute about the document's authenticity."  *Goines*, 822 F.3d at 166 (citations omitted); *see also Woods v. City of Greensboro*, 855 F.3d 639, 642 (4th Cir. 2017); *Kensington*

*Volunteer Fire Dep't v. Montgomery Cty.*, 684 F.3d 462, 467 (4th Cir. 2012). To be "integral," a document must be one "that by its 'very existence, and *not the mere information it contains*, gives rise to the legal rights asserted.'" *Chesapeake Bay Found., Inc. v. Severstal Sparrows Point, LLC*, 794 F. Supp. 2d 602, 611 (D. Md. 2011) (emphasis in original) (quoting *Walker v. S.W.I.F.T. SCRL*, 517 F. Supp. 2d 801, 806 (E.D. Va. 2007)).

However, "before treating the contents of an attached or incorporated document as true, the district court should consider the nature of the document and why the plaintiff attached it." *Goines*, 822 F.3d at 167 (citing *N. Ind. Gun & Outdoor Shows, Inc. v. City of S. Bend*, 163 F.3d 449, 455 (7th Cir. 1998)). "When the plaintiff attaches or incorporates a document upon which his claim is based, or when the complaint otherwise shows that the plaintiff has adopted the contents of the document, crediting the document over conflicting allegations in the complaint is proper." *Goines*, 822 F.3d at 167. Conversely, "where the plaintiff attaches or incorporates a document for purposes other than the truthfulness of the document, it is inappropriate to treat the contents of that document as true." *Id.*

### B. Motion for Summary Judgment

As noted, defendants have moved, in the alternative, for summary judgment. ECF 17; ECF 17-3. A motion styled in the alternative, to dismiss or for summary judgment, implicates the court's discretion under Rule 12(d) of the Federal Rules of Civil Procedure. *See Kensington Vol. Fire Dept., Inc. v. Montgomery Cty.*, 788 F. Supp. 2d 431, 436-37 (D. Md. 2011). Ordinarily, a court "is not to consider matters outside the pleadings or resolve factual disputes when ruling on a motion to dismiss." *Bosiger v. U.S. Airways*, 510 F.3d 442, 450 (4th Cir. 2007). However, under Rule 12(b)(6), a court, in its discretion, may consider matters outside of the pleadings, pursuant to Rule 12(d). If the court does so, "the motion must be treated as one

for summary judgment under Rule 56," and "[a]ll parties must be given a reasonable opportunity to present all the material that is pertinent to the motion." Fed. R. Civ. P. 12(d). But when, as here, the movant expressly captions its motion "in the alternative," as one for summary judgment, and submits matters outside the pleadings for the court's consideration, the parties are deemed to be on notice that conversion under Rule 12(d) may occur; the court "does not have an obligation to notify parties of the obvious." *Laughlin v. Metro. Wash. Airports Auth*., 149 F.3d 253, 261 (4th Cir. 1998).

A district judge has "complete discretion to determine whether or not to accept the submission of any material beyond the pleadings that is offered in conjunction with a Rule 12(b)(6) motion and rely on it, thereby converting the motion, or to reject it or simply not consider it." 5C ALAN WRIGHT & ARTHUR MILLER, ET AL., FEDERAL PRACTICE & PROCEDURE § 1366 (3d ed.). This discretion "should be exercised with great caution and attention to the parties' procedural rights." *Id*. at 149. In general, courts are guided by whether consideration of extraneous material "is likely to facilitate the disposition of the action," and "whether discovery prior to the utilization of the summary judgment procedure" is necessary. *Id*. at 165-67.

Ordinarily, summary judgment is inappropriate "where the parties have not had an opportunity for reasonable discovery." *E.I. du Pont de Nemours & Co.*, 637 F.3d at 448-49; *see Putney v. Likin*, 656 F. App'x 632, 638-640 (4th Cir. 2016) (per curiam); *McCray v. Maryland Dep't of Transp.*, 741 F.3d 480, 483 (4th Cir. 2014). However, "the party opposing summary judgment 'cannot complain that summary judgment was granted without discovery unless that party has made an attempt to oppose the motion on the grounds that more time was needed for discovery.'" *Harrods Ltd. v. Sixty Internet Domain Names*, 302 F.3d 214, 244 (4th Cir. 2002) (quoting *Evans v. Techs. Applications & Serv. Co*., 80 F.3d 954, 961 (4th Cir. 1996)); *see also*

*Dave & Buster's, Inc. v. White Flint Mall, LLLP*, 616 F. App'x 552, 561 (4th Cir. 2015).

To raise adequately the issue that discovery is needed, the non-movant typically must file an affidavit or declaration pursuant to Rule 56(d) (formerly Rule 56(f)), explaining why, "for specified reasons, it cannot present facts essential to justify its opposition," without needed discovery. Fed. R. Civ. P. 56(d); *see Harrods*, 302 F.3d at 244-45 (discussing the affidavit requirement of former Rule 56(f)). A nonmoving party's Rule 56(d) request for additional discovery is properly denied "where the additional evidence sought for discovery would not have by itself created a genuine issue of material fact sufficient to defeat summary judgment." *Strag v. Bd. of Trs., Craven Cmty. Coll.*, 55 F.3d 943, 954 (4th Cir. 1995); *see Amirmokri v. Abraham*, 437 F. Supp. 2d 414, 420 (D. Md. 2006), *aff'd*, 266 F. App'x. 274 (4th Cir. 2008), *cert. denied*, 555 U.S. 885 (2008).

If a nonmoving party believes that further discovery is necessary before consideration of summary judgment, the party who fails to file a Rule 56(d) affidavit does so at his own peril, because "'the failure to file an affidavit . . . is itself sufficient grounds to reject a claim that the opportunity for discovery was inadequate.'" *Harrods*, 302 F.3d at 244 (quoting *Evans*, 80 F.3d at 961); *see also Dave & Buster's, Inc.*, 616 F. App'x at 561. But, the nonmoving party's failure to file a Rule 56(d) affidavit does not obligate a court to issue a summary judgment ruling that is obviously premature. Although the Fourth Circuit has placed "'great weight'" on the Rule 56(d) affidavit, and has said that a mere "'reference to Rule 56(f) [now Rule 56(d)] and the need for additional discovery in a memorandum of law in opposition to a motion for summary judgment is not an adequate substitute for [an] affidavit,'" the appellate court has "not always insisted" on a Rule 56(d) affidavit. *Harrods*, 302 F.3d at 244 (quoting *Evans*, 80 F.3d at 961). According to the Fourth Circuit, the failure to file an affidavit may be excused "if the nonmoving party has

adequately informed the district court that the motion is pre-mature and that more discovery is necessary", and the "nonmoving party's objections before the district court 'served as the functional equivalent of an affidavit.'" *Id.* at 244-45 (quoting *First Chicago Int'l v. United Exchange Co., LTD*, 836 F.2d 1375, 1380-81 (D.C. Cir. 1988)).

Foreman has not filed an affidavit or declaration pursuant to Rule 56(d). Nor has he argued that proceeding to summary judgment before discovery would prejudice his claims. Indeed, plaintiff's Opposition addresses, in part, the merits of defendant's summary judgment motion. *See* ECF 23-1 at 9-11. Moreover, he has also submitted a few exhibits with his Opposition. ECF 23-2 at 2-4. And, his Opposition relies on exhibits submitted by defendants, including the Affidavit of Dr. Clem (ECF 23-2 at 6-12) and portions of Foreman's medical records. *Id.* at 14-29; *see also* ECF 23-1 at 10. Notably, plaintiff has not challenged the exhibits attached to the Motion.

Therefore, I am satisfied that it is appropriate to address some of plaintiff's claims in the context of summary judgment, because doing so will facilitate disposition of the case.

Under Rule 56(a) of the Federal Rules of Civil Procedure, summary judgment is appropriate only "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322-24 (1986); *see also Iraq Middle Mkt. Dev. Found. v. Harmoosh*, 848 F.3d 235, 238 (4th Cir. 2017) ("A court can grant summary judgment only if, viewing the evidence in the light most favorable to the non-moving party, the case presents no genuine issues of material fact and the moving party demonstrates entitlement to judgment as a matter of law."). The nonmoving party must demonstrate that there are disputes of material fact so as to preclude the award of summary judgment as a matter of law. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S.

574, 585-86 (1986).

The Supreme Court has clarified that not every factual dispute will defeat a summary judgment motion. "By its very terms, this standard provides that the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986) (emphasis in original). A fact is "material" if it "might affect the outcome of the suit under the governing law." *Id.* at 248. There is a genuine issue as to material fact "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*; *see Sharif v. United Airlines, Inc.*, 841 F.3d 199, 2014 (4th Cir. 2016); *Raynor v. Pugh*, 817 F.3d 123, 130 (4th Cir. 2016); *Libertarian Party of Va. v. Judd*, 718 F.3d 308, 313 (4th Cir. 2013). On the other hand, summary judgment is appropriate if the evidence "is so one-sided that one party must prevail as a matter of law." *Anderson*, 477 U.S. at 252, 106 S. Ct. 2505. And, "the mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." *Id.*

Notably, "[a] party opposing a properly supported motion for summary judgment 'may not rest upon the mere allegations or denials of [her] pleadings,' but rather must 'set forth specific facts showing that there is a genuine issue for trial.'" *Bouchat v. Baltimore Ravens Football Club, Inc.*, 346 F.3d 514, 522 (4th Cir. 2003) (quoting former Fed. R. Civ. P. 56(e)), *cert. denied*, 541 U.S. 1042 (May 17, 2004); *see also Celotex*, 477 U.S. at 322-24. As indicated, the court must view all of the facts, including reasonable inferences to be drawn from them, in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co., Ltd.*, 475 U.S. at 587; *accord Roland v. United States Citizenship & Immigration Servs.*, 850 F.3d 625, 628

(4th Cir. 2017); *FDIC v. Cashion*, 720 F.3d 169, 173 (4th Cir. 2013).

The district court's "function" is not "to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson*, 477 U.S. at 249; *accord Guessous v. Fairview Prop. Inv., LLC*, 828 F.3d 208, 216 (4th Cir. 2016). Thus, in considering a summary judgment motion, the court may not make credibility determinations. *Jacobs v. N.C. Administrative Office of the Courts*, 780 F.3d 562, 569 (4th Cir. 2015); *Mercantile Peninsula Bank v. French*, 499 F.3d 345, 352 (4th Cir. 2007). Therefore, in the face of conflicting evidence, such as competing affidavits, summary judgment ordinarily is not appropriate, because it is the function of the fact-finder to resolve factual disputes, including matters of witness credibility. *See Black & Decker Corp. v. United States*, 436 F.3d 431, 442 (4th Cir. 2006); *Dennis v. Columbia Colleton Med. Ctr., Inc.*, 290 F.3d 639, 644-45 (4th Cir. 2002).

However, to defeat summary judgment, conflicting evidence must give rise to a *genuine* dispute of material fact. *Anderson*, 477 U.S. at 247-48. If "the evidence is such that a reasonable jury could return a verdict for the nonmoving party," then a dispute of material fact precludes summary judgment. *Id.* at 248; *see Sharif v. United Airlines, Inc.*, 841 F.3d 199, 204 (4th Cir. 2016). Conversely, summary judgment is appropriate if the evidence "is so one-sided that one party must prevail as a matter of law." *Anderson*, 477 U.S. at 252. And, "the mere existence of a scintilla of evidence in support of the [movant's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [movant]." *Id.*

### III. Discussion

### A. 42 U.S.C. § 1983

Section 1983 of Title 42 of the United States Code provides that a plaintiff may file suit against any person who, acting under color of state law, "subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws" of the United States. 42 U.S.C. § 1983; *see, e.g.*, *Filarsky v. Delia*, 566 U.S. 377 (2012); *see also Owens v. Baltimore City State's Attorney's Office*, 767 F.3d 379 (4th Cir. 2014). However, § 1983 "'is not itself a source of substantive rights,' but provides 'a method for vindicating federal rights elsewhere conferred.'" *Albright v. Oliver*, 510 U.S. 266, 271 (1994) (quoting *Baker v. McCollan*, 443 U.S. 137, 144 n. 3 (1979)). In other words, § 1983 allows "a party who has been deprived of a federal right under the color of state law to seek relief." *City of Monterey v. Del Monte Dunes at Monterey, Ltd.*, 526 U.S. 687, 707 (1999).

To state a claim under § 1983, a plaintiff must allege (1) that a right secured by the Constitution or laws of the United States was violated, and (2) that the alleged violation was committed by a "person acting under the color of state law." *West v. Atkins*, 487 U.S. 42, 48 (1988); *see Crosby v. City of Gastonia*, 635 F.3d 634, 639 (4th Cir. 2011), *cert. denied*, 565 U.S. 823 (2011); *Wahi v. Charleston Area Medical Ctr., Inc.*, 562 F.3d 599, 615 (4th Cir. 2009); *Jenkins v. Medford*, 119 F.3d 1156, 1159-60 (4th Cir. 1997). The phrase "under color of state law" is an element that "is synonymous with the more familiar state-action requirement—and the analysis for each is identical." *Philips v. Pitt Cty. Memorial Hosp.*, 572 F.3d 176, 180 (4th Cir. 2009) (citing *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 929 (1982)).

Section 1983 requires a showing of personal fault based upon a defendant's own conduct. *See Vinnedge v. Gibbs*, 550 F.2d 926, 928 (4th Cir. 1977) (stating that for an individual defendant to be held liable pursuant to 42 U.S.C. § 1983, the plaintiff must affirmatively show that the official acted personally to deprive the plaintiff of his rights). In other words, there is no respondeat superior liability under § 1983. *Ashcroft v. Iqbal*, 556 U.S. 662, 676 (2009) ("Because vicarious liability is inapplicable to . . . § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution."). Liability based on respondeat superior does not apply to a § 1983 action. *See Wilcox v. Brown*, 877 F.3d 161, 170 (4th Cir. 2017); *Love-Lane v. Martin*, 355 F.3d 766, 782 (4th Cir. 2004); *Trulock v. Freeh*, 275 F.3d 391, 402 (4th Cir. 2001).

In *Monell v. New York City Dep't of Soc. Serv.'s.*, 436 U.S. 658, 691 (1978), the Supreme Court determined that governmental bodies may be liable under § 1983 based on the unconstitutional actions of individual defendants, but only if those defendants were executing an official policy, custom, or practice of the local government that resulted in a violation of the plaintiff's federal rights. *Id.* at 690-91. Therefore, a plaintiff seeking to establish such liability pursuant to § 1983 must "adequately plead and prove the existence of an official policy or custom that is fairly attributable" to the governmental body and that it "proximately caused the deprivation of their rights." *Jordan by Jordan v. Jackson*, 15 F.3d 333, 338 (4th Cir. 1994). "An official policy often refers to 'formal rules or understandings . . . that are intended to, and do, establish fixed plans of action to be followed under similar circumstances consistently and over time,' and must be contrasted with 'episodic exercises of discretion in the operational details of government.'" *Semple v. City of Moundsville*, 195 F.3d 708, 712 (4th Cir. 1999) (alteration in *Semple*) (quoting *Pembaur v. Cincinnati*, 475 U.S. 469, 480 (1986)).

**B.  The Eighth Amendment**

The Eighth Amendment prohibits "unnecessary and wanton infliction of pain" by virtue of its guarantee against cruel and unusual punishment.  *Gregg v. Georgia*, 428 U.S. 153, 173 (1976); *see also Estelle v. Gamble*, 429 U.S. 97, 102 (1976); *Scinto v. Stansberry*, 841 F.3d 219, 225 (4th Cir. 2016); *King v. Rubenstein*, 825 F.3d 206, 218 (4th Cir. 2016).  To state an Eighth Amendment claim for denial of adequate medical care, a plaintiff must demonstrate that a defendant's actions or the failure to act amounted to deliberate indifference to a serious medical need.  *See Estelle*, 429 U.S. at 106; *Jackson v. Lightsey*, 775 F.3d 170, 178 (4th Cir. 2014); *Iko v. Shreve*, 535 F.3d 225, 241 (4th Cir. 2008).  The Fourth Circuit has characterized the applicable standard as an "exacting" one.  *Lightsey*, 775 F.3d at 178.

Deliberate indifference to a serious medical need requires proof that, objectively, the prisoner plaintiff was suffering from a serious medical need and that, subjectively, the prison staff was aware of the need for medical attention but failed either to provide it or to ensure that the needed care was available.  *See Farmer v. Brennan*, 511 U.S. 825, 837 (1994); *King*, 825 F.3d at 219.  A "'serious . . . medical need'" is "'one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention.'"  *Iko*, 535 F.3d at 241 (quoting *Henderson v. Sheahan*, 196 F.3d 839, 846 (7th Cir. 1999)); *see Scinto*, 841 F.3d at 228.  In a case involving a claim of deliberate indifference to a serious medical need, the inmate must also show a "significant injury."  *Danser v. Stansberry*, 772 F.3d 340, 346 n.8 (4th Cir. 2014).

Proof of an objectively serious medical condition does not end the inquiry.  The subjective component requires a determination as to whether the defendant acted with reckless disregard in the face of a serious medical condition, *i.e.*, with "a sufficiently culpable state of

mind." *Wilson v. Seiter*, 501 U.S. 294, 298 (1991); *see Farmer*, 511 U.S. at 839-40; *Scinto*, 841 F.3d at 225. Put another way, "[t]o show an Eighth Amendment violation, it is not enough that the defendant *should* have known of a risk; he or she must have had actual subjective knowledge of both the inmate's serious medical condition and the excessive risk posed by the official's action or inaction." *Lightsey*, 775 F.3d at 178. The Fourth Circuit has said: "True subjective recklessness requires knowledge both of the general risk, and also that the conduct is inappropriate in light of that risk." *Rich v. Bruce*, 129 F.3d 336, 340 n.2 (4th Cir. 1997); *see also Young v. City of Mt. Ranier*, 238 F.3d 567, 575-76 (4th Cir. 2001).

Notably, deliberate indifference "is a higher standard for culpability than mere negligence or even civil recklessness" and, "as a consequence, many acts or omissions that would constitute medical malpractice will not rise to the level of deliberate indifference." *Lightsey*, 775 F.3d at 178; *see also Scinto*, 841 F.3d at 225; *Russell v. Sheffer*, 528 F.2d 318, 319 (4th Cir. 1975); *Donlan v. Smith*, 662 F. Supp. 352, 361 (D. Md. 1986). In *Estelle v. Gamble*, 429 U.S. at 106, the Supreme Court said: "[A] complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment. Medical malpractice does not become a constitutional violation merely because the victim is a prisoner." What the Court said in *Grayson v. Peed*, 195 F.3d 692, 695-96 (4th Cir. 1999), is also pertinent: "Deliberate indifference is a very high standard—a showing of mere negligence will not meet it . . . [T]he Constitution is designed to deal with deprivations of rights, not errors in judgments, even though such errors may have unfortunate consequences . . . ."

"[A]ny negligence or malpractice on the part of . . . doctors in missing [a] diagnosis does not, by itself, support an inference of deliberate indifference." *Johnson v. Quinones*, 145 F.3d

-23-

164, 166 (4th Cir. 1998). Of course, if a risk is obvious, a prison official "cannot hide behind an excuse that he was unaware of a risk." *Brice v. Va. Beach Corr. Ctr.*, 58 F.3d 101, 105 (4th Cir. 1995). But, without evidence that a healthcare provider linked the presence of symptoms with a diagnosis of a serious medical condition, the subjective knowledge requirement is not met. *Johnson*, 145 F.3d at 169 (reasoning that actions inconsistent with an effort to hide a serious medical condition refute the presence of subjective knowledge).

Of import here, an inmate's mere disagreement with medical providers about the proper course of treatment does not support an Eighth Amendment cause of action. *See Wright v. Collins*, 766 F.2d 841, 849 (4th Cir. 1985); *Wester v. Jones*, 554 F.2d 1285 (4th Cir. 1977). Rather, a prisoner-plaintiff must show that the medical provider failed to make a sincere and reasonable effort to care for the inmate's medical problems. *See Startz v. Cullen*, 468 F.2d 560, 561 (2d Cir. 1972); *Smith v. Mathis*, PJM-08-3302, 2012 WL 253438, at * 4 (D. Md. Jan. 26, 2012), *aff'd*, 475 F. App'x 860 (4th Cir. 2012); *Lopez v. Green*, PJM-09-1942, 2012 WL 1999868, at * 2 (D. Md. June 3, 2012); *Robinson v. W. Md. Health Sys. Corp.*, DKC-10-3223, 2011 WL 2713462, at *4 (D. Md. July 8, 2011). And, the right to medical treatment is "limited to that which may be provided upon a reasonable cost and time basis and the essential test is one of medical necessity and not simply that which may be considered merely desirable." *Bowring v. Godwin*, 551 F.2d 44, 47-48 (4th Cir. 1977).

## C. Analysis

### 1. Motion to Dismiss

Foreman sued Wexford, a private corporation that contracts with the State to provide medical care for inmates at ECI and other correctional institutions, alleging failure to provide adequate medical care. ECF 1. Wexford argues that it cannot be liable for plaintiff's alleged

injuries based on respondeat superior. ECF 17-3 at 11. And, Wexford contends that Foreman has failed to allege facts to support a claim that his injuries were caused by an official policy, custom, or practice of Wexford, pursuant to *Monell*, 436 U.S. 658. *See* ECF 17-3 at 11-12. Additionally, defendants argue that Foreman has failed to allege facts showing that the conduct of Wexford's employees amounted to deliberate indifference to a serious illness or injury, in violation of the Eighth Amendment. *Id.* at 12-14.

In his Opposition, plaintiff contends that his Complaint alleges facts sufficient for the Court to infer, pursuant to Rule 12(b)(6), that Wexford had "a custom of minimizing prisoner injuries" and a "policy" of delaying medical care to inmates. ECF 23-1 at 8. Additionally, plaintiff argues that his Eighth Amendment claim withstands dismissal because Wexford's alleged custom and practice of minimizing a prisoner's injuries and delaying his care amounts to deliberate indifference to serious medical needs. *Id.* at 8-9. Plaintiff also avers that he "need not produce a competing [medical] opinion . . ." at the motion to dismiss stage. *Id.*

As noted, plaintiff was seen by "Nurse Georgia" approximately fifteen minutes after the fall on March 26, 2016. ECF 1 at 2. According to plaintiff, he did not initially receive an MRI or x-ray because the fall occurred on a Saturday and Wexford only conducts x-rays on Tuesdays, Wednesdays, and Thursdays. *Id.* at 2. Plaintiff asserts that he was told that he would be "called back" in approximately three days for x-rays of his head, back, and wrist, but that did not happen. *Id.* at 3. Plaintiff avers that approximately one month later, on April 27, 2016, an x-ray appointment was scheduled. *Id.* at 4. And, plaintiff received x-rays at an unspecified date in April 2016, presumably of his wrist and back. *Id.* at 5. Plaintiff received an x-ray of his skull in June 2016. *Id.*

Because Wexford is a contractual medical provider for the State, 42 U.S.C. § 1983

applies. *West*, 487 U.S. at 108 (explaining that a private entity that contracts with the state to provide medical services acts "under color of state law"). For Wexford to be liable under § 1983, Forman must allege facts sufficient to show that Wexford had an official policy, practice, or custom that caused plaintiff's Eighth Amendment rights to be violated. *See Monell*, 436 U.S. at 691; *see also Jordan by Jordan*, 15 F.3d at 338. Yet, plaintiff has alleged no facts to show that Wexford had such a policy, practice, or custom.

A policy or custom that gives rise to § 1983 liability will not "be inferred merely from municipal inaction in the face of isolated constitutional deprivations by municipal employees." *Milligan v. City of Newport News*, 743 F.2d 227, 230 (4th Cir. 1984). Only when the conduct demonstrates a "deliberate indifference" to the rights of the governmental body's inhabitants can the conduct be properly thought of as a "policy or custom" actionable under § 1983. *Jones v. Wellham*, 104 F.3d 620, 626 (4th Cir. 1997) (citing *City of Canton v. Harris*, 489 U.S. 378, 389 (1989)).

Even assuming the truth of plaintiff's allegations, Foreman has failed to state a *Monell* claim against Wexford, 436 U.S. 65. Plaintiff alleges no facts suggesting a plan, rule, policy, custom, or practice pertaining to the delay of care and treatment of prisoners by Wexford employees. Indeed, Foreman complains that Ford failed to follow a Wexford policy that required Ford to obtain a skull x-ray for plaintiff. ECF 23-1 at 10. Plaintiff's bald assertions do not give rise to a plausible inference that Wexford had a policy or custom to delay medical care to prisoners or to minimize their injuries.

Nor has plaintiff stated a claim against Wexford based upon a theory of respondeat superior. Liability of supervisory officials in § 1983 claims "is premised on 'a recognition that supervisory indifference or tacit authorization of subordinates' misconduct may be a causative

factor in the constitutional injuries they inflict on those committed to their care.'" *Baynard v. Malone*, 268 F.3d 228, 235 (4th Cir. 2001) (citing *Slakan v. Porter*, 737 F.2d 368, 372 (4th Cir. 1984)).

> With respect to a supervisory liability claim in a § 1983 action, a plaintiff must allege:
>
> (1) That the supervisor had actual or constructive knowledge that his subordinate was engaged in conduct that posed a pervasive and unreasonable risk of constitutional injury to . . . the plaintiff; (2) that the supervisor's response to that knowledge was so inadequate as to show deliberate indifference to or tacit authorization of the alleged offensive practices; and (3) that there was an affirmative causal link between the supervisor's inaction and the particular constitutional injury suffered by the plaintiff.

*Shaw v. Stroud*, 13 F.3d 791, 799 (4th Cir. 1994) (citations omitted), *cert. denied*, 513 U.S. 813 (1994); *see also Wilcox*, 877 F.3d at 170.

Plaintiff has not alleged any facts showing that Wexford or any of its supervisory employees had actual or constructive knowledge that the conduct of Wexford's employees posed an unreasonable risk of constitutional injury to plaintiff.

Accordingly, under Rule 12(b)(6), to the extent that plaintiff asserts a *Monell* claim or a supervisory liability claim against Wexford, the claims must be dismissed.

### 2. Summary Judgment

The claims against Ford and Wexford do not survive under Rule 56.

Foreman contends that he has met his burden under Rule 56. ECF 23-1 at 6; *see also id.* at 9-11. According to Foreman, this is not a case of mere disagreement as to his medical treatment. *Id.* at 9-11. He argues that Wexford and Ford were deliberately indifferent to his medical condition because it took "more than two (2) months [for plaintiff] to be prescribed any medication, more than three (3) months to obtain x-rays of all injured areas of his body, and more than eleven months to be referred to physical therapy . . . ." *Id.* at 10-11.

Further, plaintiff argues, in relevant part, ECF 23-1 at 10:

> [T]he medical records produce inconsistencies in the appropriate protocol to approve treatment by the medical staff. For instance, on April 27, 2016, Bruce Ford, P.A. informed the Plaintiff that x-rays were not taken of his skull because there were no reports of blurred vision or loss of conscious [sic]. However, the medical records clearly document the Plaintiff's report to medical staff on April 19, 2016 of double or blurred vision. This single example . . . establishes that the protocol used by Bruce Ford, P.A. would have required a skull x-ray on April 19, 2016, more than two (2) months prior to Dr. Oteyza's ordering the same on June 14, 2016.

Defendants maintain that the evidence shows that the conduct of Wexford's employees, including Ford, did not amount to deliberate indifference to a serious injury, as required by the Eighth Amendment. ECF 17-3 at 12-14. To the contrary, they argue that Foreman received adequate, timely, and continuous medical care. *Id.* at 17-20.

In their Reply, defendants observe that only three incidents identified in the Complaint "could possibly be put forward as untimely 'delay' in providing medical care." ECF 24 at 2. They are: (1) it took "Nurse Georgia" 15 minutes to respond at the time of injury on March 26, 2016; (2) plaintiff did not undergo hand and wrist x-rays until April 27, 2016; and (3) plaintiff did not have a head x-ray until June 2016. ECF 24 at 2, ¶ 5.[7]

I have already reviewed, at length, plaintiff's medical records. Among other things, they show that, on the night of the incident, plaintiff received care from "Nurse Georgia." *See* ECF 23-1 at 2. That Foreman did not initially receive stitches, an MRI, x-rays, or a concussion test is not dispositive.

Foreman cites the Affidavit of Dr. Clem (ECF 23-2) to show that plaintiff complained to

---

[7] In his Complaint, plaintiff states that he received an x-ray of his skull on June 16, 2016. ECF 1 at 5. Defendants state in the Reply that plaintiff received the x-ray of his skull on June 14, 2017. ECF 24 at 2, ¶ 5. The Court assumes that the year 2017 is a typographical error. For the purpose of the Motion, the discrepancy between June 16, 2016, as stated by plaintiff, and June 14, 2016, as stated by defendants, is of no significance.

Nurse Frey on April 19, 2016, of having "double and blurred vision after getting up from lying down." ECF 23-2 at 7, ¶ 6; *see* ECF 23-1 at 3. According to Dr. Clem, on April 27, 2016, Ford ordered x-rays of plaintiff's wrist and back but not plaintiff's skull, because "there was no loss of consciousness or blurred vision." ECF 23-2 at 8, ¶ 7; *see also* ECF 17-4 at 5.

On June 14, 2016, plaintiff met with Dr. Oteyza. ECF 23-2 at 8-9, ¶ 10. According to Dr. Oteyza's notes, plaintiff complained of frequent headaches. ECF 17-4 at 14. At that point, Dr. Oteyza ordered an x-ray of plaintiff's skull. *Id.* at 16. On August 29, 2016, plaintiff met with Nurse Tabulov. ECF 23-2 at 14-16. She determined that plaintiff had postconcussion syndrome and recommended physical therapy. *Id.* at 16.

In sum, between the time of plaintiff's fall and the filing of suit, plaintiff received medical care on more than thirty occasions. *See* ECF 17-4 at 1-78. His claims as to the timeliness of x-rays and the delay of other treatment do not amount to a violation of the Eighth Amendment. At most, Foreman's allegations against Ford and other Wexford employees suggest Foreman's dissatisfaction in the diagnosing and treatment of his injuries. However, inmates are not entitled to the treatment of their choice, and they are not constitutionally entitled to relief under the Eighth Amendment for mere negligence or errors in judgment. *Lightsey*, 775 F.3d at 178; *Grayson*, 195 F.3d at 695-96.

Plaintiff has failed to show a dispute of material facts concerning an Eighth Amendment claim for failure to provide adequate medical care.

## IV. Conclusion

For the foregoing reasons, defendants' Motion shall be construed as a motion to dismiss, in part, and a motion for summary judgment, in part. The motion to dismiss shall be granted as to plaintiff's § 1983 claims against Wexford. And, the motion for summary judgement shall be

granted as to plaintiff's Eighth Amendment claim against Ford and, in the alternative, as to Wexford.

Date: January 31, 2018

_____/s/_____
Ellen Lipton Hollander
United States District Judge